[L. A. No. 7119. In Bank.—September 15, 1922.]

THE PEOPLE, etc., Respondent, v. MERCHANTS PRO-
TECTIVE CORPORATION (a Corporation), Ap-
pellant.

[1] ATTORNEY AT LAW—CORPORATIONS—PRACTICE OF PROFESSION.—In-
dividuals may not, either singly or in association, engage in the
practice of the law without having a special license so to do, and
hence individuals forming a corporation for the practice of the
law cannot, under section 286 of the Civil Code, which defines
the purposes for which private corporations may be performed,
gain any other or further right by the act of incorporation than
that lawfully possessed by them, either singly or in the aggregate,
without incorporation.

[2] ID.—CORPORATE PURPOSES AND POWERS—CONSTRUCTION OF CHARTER
—INTERPRETATION OF CORPORATION.—In a proceeding in the nature
of *quo warranto* putting in issue the right of a corporation to en-
gage in the practice of law, the court is entitled to consider the
construction which the corporation itself has placed upon its own
power under its original and amended articles of incorporation in
determining any ambiguity in the statements of its corporate pur-
poses and powers.

[3] ID.—FURNISHING LEGAL SERVICES TO MEMBERS OF CORPORATION—
EMPLOYED ATTORNEYS—"PRACTICE OF LAW" BY CORPORATION.—A
corporation employing attorneys as its agents and representatives to
dispense legal services to its members for a yearly fee, a part of
which is paid to the attorneys for their services and the remain-
der retained by the corporation, is engaged in "the practice of the
law."

APPEAL from a judgment of the Superior Court of San
Diego County. C. N. Andrews, Judge. Affirmed.

The facts are stated in the opinion of the court.

James MacIntosh and Joseph P. Sproul for Appellant.

U. S. Webb, Attorney-General, Leon French, Deputy At-
torney-General, and Harrison G. Sloane for Respondent.

RICHARDS, J., *pro tem.*—This appeal is from a judg-
ment in the plaintiff's favor after order overruling defend-
ant's general and special demurrer to the plaintiff's com-
plaint, the defendant having failed to answer within the

time allowed by said order. The proceeding is in the nature of *quo warranto* wherein the state on the relation of the Lawyers' Institute of San Diego puts in issue the right of defendant to engage in the practice of law, not having or being able to acquire a license so to do. The plaintiff alleged that on or about May 27, 1915, the said defendant, a corporation duly organized and existing under the laws of the state of Indiana, caused a copy of its articles of incorporation and amendments thereto to be filed with the secretary of state of the state of California; that the purposes of said corporation as set forth in said articles of incorporation are "for the purpose of furnishing its members legal services," etc.; and as set forth in the amendment to its said articles of incorporation are "to combine a large number of persons, firms and corporations into a central organization who shall pay a stipulated price for the services of the organization and its employees; to appoint attorneys to look after the collection of the accounts and bills receivable and render such other professional services as is needed and required by the various members and subscribers thereto." The complaint further alleges that said defendant corporation "has engaged in, without lawful authority, grant, license, or franchise, the business of practicing law in the state of California and in particular in the county of San Diego, state of California; that it has retained and employed attorneys at law duly admitted to practice in the state of California . . . as its agents and representatives in rendering legal service to patrons of said corporation." The complaint proceeds to set forth *in haec verba* the agreement of employment between said defendant and said attorneys and also the membership agreement of its patrons under and in pursuance of which said corporation has rendered legal services to various of its patrons through the said attorneys at law, its agents and representatives, as follows: "by giving to said patrons legal advice and consultation on business, personal or private matters; by defending its patrons in actions brought against them in police courts or justices' courts; by giving to said patrons legal advice and information upon new state laws and ordinances." Finally, the complaint alleges upon information and belief "that the sole business and occupation heretofore or now carried on by said defendant in the state of Cali-

fornia is the practice of law in the manner hereinbefore designated.'' The plaintiff prays judgment that the defendant be excluded from engaging in the practice of law in the state of California and from the exercise of all corporate rights, privileges and franchises therein. Defendant having failed to answer after its demurrer was overruled, its default was duly entered and thereafter the court proceeded to take evidence in said matter, and having done so found that all the allegations of the plaintiff's petition were true. It therefore by its judgment granted the relief prayed for in said complaint. The appeal is from such judgment.

[1] The appellant's first contention upon this appeal is that its right to do the acts complained of in this proceeding were done by it under its lawful franchise from the state of California granted to it under general law; that section 286 of the Civil Code defines the purposes for which private corporations in this state may be formed as follows: ''Private corporations may be formed for any purposes for which individuals may lawfully associate themselves.'' The appellant argues that since individuals may lawfully associate themselves for the practice of law it may also do so in its corporate capacity, under the specific terms of the foregoing section of the Civil Code. The vice of this contention consists in its assumption that individuals may generally, and as a matter of right, associate themselves together for the practice of the law; but this assumption is fallacious, since, under the laws of California, individuals may not, either singly or in association, engage in the practice of the law without having a special license so to do, and hence the individuals forming this corporation could not, under the section of the code relied upon, gain any other or further right by the act of incorporation than that lawfully possessed by them, either singly or in the aggregate, without incorporation. Its contention in this respect is therefore without merit.

[2] The appellant's next contention is that its charter is the sole source to which the court could look for its powers in this proceeding, and that by the terms of its said charter, as embraced in the articles of incorporation and the amendments thereto, it did not purport to be formed for the purpose of engaging in the practice of law. That the articles of incorporation of defendant as originally

framed, in stating that "the object of this company shall be for the purpose of furnishing to its members legal services," were sufficiently broad to embrace within its said terms the doing of all those acts which, as we shall see hereafter, constitute "the practice of law," would seem to be perfectly clear; and if it be claimed by the appellant that this broad statement of its purposes has been modified by the later amendment of its articles, which embrace, among other enumerated powers, that of appointing attorneys to "render such other professional services as is needed and required by the various members and subscribers thereto," the utmost that can be said of this amendment is that it merely renders doubtful the otherwise broad and clear statements of its corporate purposes and powers. In such a case the court would be entitled to look to the acts of the defendant under its charter as originally framed and as thus amended, and to determine therefrom what its own interpretation of its charter and powers might be. This would be particularly true with respect to the agreements and engagements which the defendant entered into with its members and patrons and with such attorneys as it employed to handle their legal affairs. These were set forth fully in the complaint and the reading of them leaves little doubt that the construction which the corporation placed upon its own power under its original and amended articles of incorporation was such as to bring it fully within the description of those engaging in the practice of law as hereinafter defined.

The phrase "practicing law," or its equivalent, "the practice of law," has long had a sufficiently definite meaning throughout this country to be given a place in both constitutional and statutory law without further definition. The constitution of this state employs it in section 22 of article VI thereof, declaring that "no judge of a court of record shall practice law in any court of this state during his continuance in office." By section 281 of the Code of Civil Procedure it is provided that "if any person shall practice law in any court, except a justice's court or police court without having received a license as attorney and counselor, he shall be guilty of a contempt of court." Section 171 of the same code extends this prohibition to county clerks. They are therein forbidden to practice law in any court of this state or to act as attorney, agent or solicitor

in the presentation of claims before any department of the state or general government or in the courts of the United States during their continuance in office. Section 1209, subdivision 13, of the same code, relating to contempts, declares that "practicing law," or advertising or holding one's self out as practicing or as entitled to practice, etc., without having received a license as attorney and counselor, issued under the laws of this state, constitutes contempt of court.

While these provisions have particular relation to the practice of the law in courts of justice, the term has not been generally thus confined. In the case of *Eley* v. *Miller*, 7 Ind. App. 529 [34 N. E. 836], which involved the violation of a statute prohibiting county auditors from practicing law, the court said "as the term is generally understood, the practice of the law is the doing and performing services in a court of justice in any matter depending therein throughout its various stages and in conformity with the adopted rules of procedure. But in a larger sense it includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although such matter may or may not be depending in a court."

In the case of *People* v. *Alfani,* 227 N. Y. 334 [125 N. E. 671], wherein the defendant was charged with violating section 270 of the Penal Code of New York, prohibiting persons from practicing as attorneys at law without being licensed and admitted so to do, the court in an elaborate and well-reasoned opinion, in which numerous cases from all parts of the country are reviewed, has this to say: "It is common knowledge for which the above authorities were hardly necessary, that a large, if not the greater work, of the bar today is out of court, or office work. Counsel and advice, the drawing of agreements, the organization of corporations and preparing papers connected therewith, the drafting of legal documents of all kinds, including wills, are activities which have been long classed as law practice. The legislature is presumed to have used the words as persons generally would understand them, and not being technical or scientific terms 'to practice as an attorney at law' means to do the work as a business which is commonly and usually done by lawyers in this country." Other cases to the same effect are: *In re Lizotte,* 32 R. I. 386 [35 L. R. A.

(N. S.) 794, 79 Atl. 960]; *Miesel & Co.* v. *National Jewelers etc.*, 90 Misc. Rep. 19 [152 N. Y. Supp. 913]; *People* v. *Title Guarantee & Trust Co.*, 180 App. Div. 648 [168 N. Y. Supp. 278]; *Matter of Rothschild*, 140 App. Div. 583 [125 N. Y. Supp. 629]; *In re Duncan*, 83 S. C. 186 [18 Ann. Cas. 657, 24 L. R. A. (N. S.) 750, 65 S. E. 211]; *People* v. *People's Trust Co*, 180 App. Div. 494 [167 N. Y. Supp. 767]; Thornton on Attorneys at Law, sec. 69.

A most recent case expressing the same views is that of *State ex rel. Lundin* v. *Merchants' Protective Assn.*, 105 Wash. 12 [177 Pac. 694]. This was a *quo warranto* case in which this identical appellant was the defendant and in which this precise issue was involved, and the same defenses herein insisted upon were urged. The supreme court of Washington, speaking of this defendant, said: "If it is doing the things that it assumes to do in its articles it is giving legal advice and counsel, and prosecuting without fee, other than the membership fee, the suits of its subscribers in the police and justice courts, and it is advising them upon all state laws and ordinances and will if need be, prosecute criminally those who have offended against its membership. This is a practice of the law." (Citing the cases above cited.)

[3] The final contention of the appellant herein is that it is not engaged in the practice of the law, for the reason that its articles declare, and its contracts with its membership agree, that it will furnish to its members legal services through the appointment of attorneys to look after the collection of accounts and bills receivable "and render such other professional service as may be needed and required by the various members and subscribers thereto," and that thus it is merely an agency for the bringing of attorneys and clients together and is not itself engaged in practicing law.

That this statement of the objects and purposes of the defendant's incorporation is much too narrow is shown by the certificate which it issues to its membership and by the agreement which it makes with its attorneys. In the first of these it certifies that its members are entitled "to legal advice and consultation on all such personal or private matters without charge, at the office of the attorneys whose names appear on this certificate and *who are retained by and at the expense of this corporation.*" It further certifies that

members will receive "free legal advice and information upon all the new state laws and ordinances of this city." It thus appears that the relation of attorney and client thus to be created is not that relation between the listed attorneys and the membership of the corporation, but is that relation between the said attorneys and the corporation itself. They are its retained and paid attorneys. Like every other corporation it must act through the agency of natural persons, and these attorneys are its agents and their acts are its acts, and it, through them, is the actual and responsible actor and adviser of its membership in the various legal matters the aforesaid certificate of membership relates. This interpretation of the defendant's agreement with its membership is enforced by the contract which it makes with its attorneys. The opening clause of said contract designates the corporation as the first party and the attorney or attorneys as the second party and proceeds as follows: "Whereas the parties hereto are mutually desirous of entering into an agreement whereby the second parties are to represent the first party as its attorneys in the City of San Diego, etc. Now therefore it is mutually agreed by and between the parties hereto that the second parties shall act as attorneys and are hereby retained by said first party as its attorney to render all those certain services to persons, partnerships or corporations in the city and county of San Diego, California, holding membership or memberships in the said, The Merchants Protective Corporation as said services are set forth and specifically mentioned in the certificate of membership issued by said first party to its members, etc." The complaint herein alleges, and the court finds, that the method of compensation provided to be paid by the defendant to its said attorneys was as follows: A membership fee of $10 per year was paid to it by its members. Of this sum $2 for each member was paid to the said attorneys for their services "as agent and representative" of the corporation in the business of each of its said patrons for the period of one year; the remaining $8 of said fee was retained by said corporation.

This brings us to the final question, which is as to whether such a corporation thus organized, thus employing attorneys as its agents and representatives, and thus dispensing legal advice, counsel, information and services of the sort usually

and generally furnished by regularly admitted and licensed attorneys and counselors to their clients in the practice of their profession, is engaged in the practice of law. The authorities, which are practically unanimous, furnish but one answer to this question, and that answer is well-expressed in the case of *State ex rel. Lundin* v. *Merchants Protective Assn., supra,* wherein the supreme court of Washington, quoting from Ruling Case Law, says: "The practice of the law is not a business that is open to a commercial corporation. 'Since, as has been seen, the practice of the law is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the court, and as these conditions cannot be performed by a corporation it follows that the practice of law is not a lawful business for a corporation to engage in. As it cannot practice law directly it cannot do so indirectly by employing competent lawyers to practice for it, as that would be an evasion which the law will not tolerate.' " (2 R. C. L. 946; *In re Co-op. Law Co.,* 198 N. Y. 479 [139 Am. St. Rep. 839, 19 Ann. Cas. 879, 32 L. R. A. (N. S.) 55, 92 N. E. 15].)

The essential element underlying the relation of attorney and client is that of trust and confidence of the highest degree growing out of the employment and entering into the performance of every duty which the attorney owes to his client in the course of such employment. It is the existence of this essential element as the basis of said relation which has called into being the various statutory regulations governing the admission of attorneys and counselors at law and which embody certain requirements of character, integrity and learning as the pre-requisites of such admission to the right and privilege of practicing law. It is the possession or reputation for the possession of these personal qualifications which constitutes, as a rule, the main inducement for the formation of the personal and confidential relation of attorney and client. The intervention of a corporation between the membership it secures and the attorneys it employs, which corporation can in and of itself possess none of these qualifications, obviously leaves out of view the necessity for their existence. The essential relation of trust and confidence between attorney and client cannot be said to arise where the attorney is employed, not by the client,

but by some corporation which has undertaken to furnish its members with legal advice, counsel and professional services. The attorney in such a case owes his first allegiance to his immediate employer, the corporation, and owes, at most, but an incidental, secondary and divided loyalty to the clientele of the corporation. This phase of the question was very fully considered in the case of *In re Co-operative Law Co.,* 198 N. Y. 479 [139 Am. St. Rep. 839, 19 Ann. Cas. 879, 32 L. R. A. (N. S.) 55, 92 N. E. 15], wherein the court says:

"The relation of attorney and client is that of master and servant in a limited and dignified sense, and it involves the highest trust and confidence. It cannot be delegated without consent and it cannot exist between an attorney employed by a corporation to practice law for it, and a client of the corporation, for he would be subject to the directions of the corporation and not to the directions of the client. There would be neither contract nor privity between him and the client, and he would not owe even the duty of counsel to the actual litigant. The corporation would control the litigation, the money earned would belong to the corporation and the attorney would be responsible to the corporation only. His master would not be the client but the corporation, conducted it may be wholly by laymen, organized simply to make money and not to aid in the administration of justice which is the highest function of an attorney and counselor at law. The corporation might not have a lawyer among its stockholders, directors or officers. Its members might be without character, learning or standing. There would be no remedy by attachment or disbarment to protect the public from imposition or fraud, no stimulus to good conduct from the traditions of an ancient and honorable profession, and no guide except the sordid purpose to earn money for stockholders. The bar, which is an institution of the highest usefulness and standing, would be degraded if even its humblest member became subject to the orders of a money-making corporation engaged not in conducting litigation for itself, but in the business of conducting litigation for others. The degradation of the bar is an injury to the state."

We are satisfied that the foregoing principles should be determinative of the case before us. The appellant herein, both in its articles of incorporation and in its agreements

with its membership, is assuming to do those things in the way of furnishing legal advice, counsel and services which are usually done by attorneys and counselors in the ordinary practice of the legal profession. In so doing it has attempted to enter a domain which as a corporation it may not lawfully invade. The appellant is a creature of the state, and hence the state possesses the right through the medium of this writ to prevent the unlawful exercise of its chartered powers. This the trial court has by its judgment properly done.

The judgment is affirmed.

Myers, J., *pro tem.*, Waste, J., Lawlor, J., Lennon, J., and Shaw, C. J., concurred.